UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

FEB 11 2000

Michael N. Milby, Clerk

| | | |
|---|---|---|
| NANCY LEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. **C-00-057** |
| | § | |
| ARANSAS COUNTY INDEPENDENT | § | |
| SCHOOL DISTRICT, STEVE KENNEDY, | § | |
| WAYNE NUGENT, MARY HOEKSTRA, | § | |
| NATALIE BAKER, LEO VILLA, | § | |
| JOE LIVINGSTON, WILLIAM NORMAN | § | |
| SPEARS III, JAMES KOONCE, AND | § | |
| ROSS McELWEE, | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Nancy Lee files this complaint against Aransas County Independent School District, Steve Kennedy, Wayne Nugent, Mary Hoekstra, Natalie Baker, Leo Villa, Joe Livingston, William Norman Spears III, James Koonce, and Ross McElwee, and for causes of action will show the following:

### JURSIDICTION AND VENUE

1.  This is a lawsuit authorized by and instituted pursuant to 42 U.S.C. § 1983. Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1343. Additionally, this court has jurisdiction of this action pursuant to its federal question jurisdiction, 18 U.S.C. § 1331.

2.  The acts and omissions complained of herein occurred within the Corpus Christi Division of the Southern District of Texas. The parties to this action all reside within the Corpus Christi Division of the Southern District of Texas. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

3.  All conditions precedent to pursuing Plaintiff's claims have occurred.

## PARTIES

4.  Plaintiff Nancy Lee is a citizen residing in the City of Rockport, Aransas County, Texas.

5.  Defendant Aransas County Independent School District (hereinafter referred to as "ACISD" or "District") is a political subdivision of the State of Texas and may be served with process by serving its chief administrative officer, Superintendent Adrain Johnson, Aransas County Independent School District, 1603 Pirate Dr., Rockport, Texas 78382.

6.  (a)  Steve Kennedy was President of the Board of Trustees of ACISD at the time of the incidents in question, is sued in his individual capacity, and may be served with process at his residence at P.O. Box 2241, Rockport, Texas 78381.

    (b)  Wayne Nugent was Vice President of the Board of Trustees of ACISD at the time of the incidents made the basis of this suit, is sued in his individual capacity, and may be served with process at his residence at P.O. Box 282, Fulton, Texas 78358.

    (c)  Mary Hoekstra was a member of the Board of Trustees of ACISD at the time of the incidents made the basis of this suit, is sued in her individual capacity, and may be served with process at her residence at 1401 Poinciana, Rockport, Texas 78382.

2

(d) Natalie Baker was a member of the Board of Trustees of ACISD at the time of the incidents made the basis of this suit, is sued in her individual capacity, and may be served with process at her residence at 203 Cherry Hill, Rockport, Texas 78382.

(e) Leo Villa was a member of the Board of Trustees of ACISD at the time of the incidents made the basis of this suit, is sued in his individual capacity, and may be served with process at his residence at 1020 S. Fuqua, Rockport, Texas 78382.

(f) Joe Livingston was a member of the Board of Trustees of ACISD at the time of the incidents made the basis of this suit, is sued in his individual capacity, and may be served with process at his residence at 1119 Oak Ave., Rockport, Texas 78382.

(g) Ross McElwee was a member of the Board of Trustees of ACISD at the time of the incidents made the basis of this suit, is sued in his individual capacity, and may be served with process at his residence at 2360 FM 1781, Rockport, Texas 78382.

(h) William Norman Spears III was Superintendent of Schools for ACISD at the time of the incidents made the basis of this suit, is sued in his individual capacity, and may be served with process at his residence at 1126 Oak Ave., Rockport, Texas 78382.

(i) James Koonce was an administrator employed by ACISD at the time of the incidents made the basis of this suit, is sued in his individual capacity, and may be served with process at his residence at 208 Doral, Rockport, Texas 78382.

## FACTUAL BASIS OF ALL CLAIMS

7. On April 28, 1999, as further implemented by the adoption of a written decision on May 5, 1999, the Board of Trustees of ACISD terminated the employment of Plaintiff, acting arbitrarily, capriciously, in bad faith, and in furtherance of its personally motivated objective to deny her property without due process of law. At the time of her termination Plaintiff held a

3

two-year contract of employment extending through the end of the 1999-2000 school year as an administrator.

8. At the time of her termination Plaintiff had more than 33 years of experience in Texas public schools, having served as the Director of Special Education since 1989. Plaintiff had an excellent reputation in her field and consistently received high evaluations from her supervisors. Her most recent evaluation contained the statement "exemplary performance in all areas." One of her peers summarized her reputation as: "She is a role model for professionals, an advocate for parents, and the best friend a special ed period child could have."

9. In the early 1990s, Ms. Lee, in the performance of her duties, ran afoul of Ms. Analisa Kennedy and her husband Steve Kennedy over issues pertaining to the education of their son. The conflict became personal and Ms. Kennedy made public, negative comments to numerous individuals regarding Ms. Lee from that point forward, as found by an independent hearing examiner who presided over the administrative hearing in this matter. At an ARD meeting in 1994 Ms. Kennedy directly stated her unhappiness with Ms. Lee and directly implied that she had been the director for "too long." In April of 1994 Ms. Lee was informed that Ms. Kennedy was making threats to sue her. Ms. Kennedy's husband, Steve Kennedy, was on the Board of Trustees and Ms. Kennedy was upset with Ms. Lee's refusal to afford favoritism to the Kennedys in the allocation of special education resources among handicapped children.

10. Also in 1992 Ms. Lee began to have difficulties with Ms. Robin Nugent, a special education teacher. Ms. Nugent made false charges in writing that Ms. Lee had instructed her to alter the Kennedy child's IEP and sent this false claim to other individuals, including Ms. Kennedy. The incident resulted in Ms. Lee responding directly to Ms. Nugent and filing a complaint with the Superintendent regarding Ms. Nugent's conduct.

4

11. In 1994-95 the Kennedys prevailed on the District to establish an assisted living program for their child and other qualified handicapped students. It was proposed that the District lease a house owned by a family member of Ms. Nugent for this purpose. Ms. Lee was not in favor of this action and secured a written statement from Pat McBurnett that this type of program might violate federal law requiring placement in the least restrictive environment. Nevertheless, the District proceeded to lease the house for this purpose and Ms. Nugent taught the program. Ms. Nugent's husband, Wayne Nugent, became a member of the Board of Trustees of ACISD. The house remained leased by ACISD at least until February 1999.

12. Mr. Kennedy became the president of the Board of Trustees and Mr. Nugent became the vice president. They began exercising control over the business of the District. For example, the District hired its special education attorney to assist Ms. Nugent with a project she was undertaking for her doctoral thesis, at District expense, by directive of Superintendent Spears. As early as March 1996 Superintendent Spears spoke to Ms. Lee regarding the animosity against her on the part of the Kennedys.

13. In March 1997 Ms. Lee was informed that Ms. Nugent was soliciting adverse information regarding Ms. Lee from other staff members, telling them to write up anything they could because her husband was going after Ms. Lee.

14. Mr. Kennedy and Mr. Nugent, being given tacit control of the District by the remainder of the Board, began a pattern of conduct discriminating against Ms. Lee and the special education program. Ms. Lee was denied standard raises afforded to other administrators, non-substantive budget amendments having no cost to the District were delayed, the Board sought to control the selection of the contract psychologist used by the special education department, the filling of teaching vacancies was delayed, and Mr. Nugent and Mr. Kennedy

5

began pushing the Superintendent to obtain an "audit" of the special education department although the department had received a thorough monitoring visit from the Texas Education Agency in the fall of 1997 and no discrepancies were found.  Ms. Lee understands that the Superintendent's appraisal was eventually downgraded by the Board because he had not arranged for a special audit of the special education department.

15. In December 1997 the high school principal brought up the issue of the lease of the Nugent house by the District, noting that it "is probably in noncompliance by virtue of being far removed from campus" and that it was "inconveniently and ineffectively located." Ms. Lee again made known to the Superintendent her objections to the use of the Nugent house; however, the District continued to lease the house at a cost of $4,800 per year.

16. On January 30, 1998 Mr. Preston Adams, a principal with whom Ms. Lee had had previous difficulties in her efforts to provide and monitor services to special education students and ensure compliance with federal law, submitted a memorandum marked "confidential" to Defendant Koonce.  In this memorandum Mr. Adam related a hearsay claim that Ms. Lee had offered to be a parent's "advocate against the jr. high," a claim shown to be false at the administrative hearing.  Mr. Adams then made vague references to "other instances" which "have been mentioned in the past concerning Mrs. Lee," and then made the general statement that he considered "these statements and actions, if substantiated, to be unethical, unprofessional, disloyal and in some instances illegal." Mr. Adams then requested an investigation and listed five supposed "witnesses." Mr. Adams did not ask Ms. Lee about any of these allegations before relaying them to Mr. Koonce and requesting the "investigation."

17. Mr. Koonce then commenced a sham investigation of allegations of "illegal" conduct.  As found by the hearing examiner, "neither during nor upon the completion of the

6

investigation did Koonce question Lee regarding any of the allegations and did not request specific factual support for claims of illegal conduct." He had conducted such "a one-sided investigation" in the past only in cases of alleged child molestation. Mr. Koonce collected statements from various individuals, one of which statements refuted the original claim that Ms. Lee had said that she would be an advocate "against the jr. high." Finding of Fact Nos. 32, 33 (hereinafter HEFOF). Mr. Koonce accepted statements from clerks to the effect that "there are things going on that are illegal" without pressing for any details, and accepted distorted versions of facts which could have been easily refuted by Ms. Lee. Also as found by the hearing examiner, Ms. Lee asked for an opportunity to respond to the allegations but was not given evidence of any specific charges or an opportunity to respond. HEFOF 34. During this period of time the Superintendent directly informed Ms. Lee that the Kennedys and Nugents were out to get her.

18.     On March 5, 1998 the District suspended Ms. Lee with pay. "The school board told the superintendent to go ahead and hire the lawyers and spend whatever it took to investigate Lee." HEFOF 35.

19.     Thereafter commenced what can fairly be characterized as a witch hunt. The attorneys, at a cost of taxpayer money in excess of $40,000 prior to the commencement of the hearing, reviewed boxes and boxes of material searching for documents which could support a case against Ms. Lee.

20.     The District and its attorneys, acting as its agents, continued for a period of many months to provide no specific charges to Ms. Lee or give her any opportunity to respond to claims that were being developed against her. The attorneys sought to use allegations from many years previously relating to the Kennedys' complaints against Ms. Lee, as well as a virtual

7

laundry list of allegations, none of which could withstand examination. Ms. Lee was given notice of the specific charges against her only when ordered by the hearing examiner in November 1998. *See* HEFOF 46. Mr. Spears testified that never before in his career had he made an important personnel recommendation without giving an individual an opportunity to respond to the allegations against him or her.

21.     On information and belief, Plaintiff would show that the sham investigation conducted by the agents of the District took place with the knowledge, acquiescence, conscious disregard, or at the direction of each of the individual Defendants herein.

22.     Acting with intentional ignorance of the truth and in conscious disregard thereof, with malice and bad faith, on August 3, 1998 Defendants Kennedy, Nugent, Hoekstra, Baker, Villa and Livingston voted to approve the recommendation of Defendant Spears for the proposed termination of Ms. Lee's contract. On July 20 the Board had taken no action regarding the extension of the Superintendent's contract or Ms. Lee's salary. The Board took such action after meeting in closed session with its agent and attorney, Katherine Martinez-Vitela.

23.     On August 19, 1998 the Board of Trustees, acting through its agent and attorney, filed, with great solemnity, a frivolous report with the State Board for Educator Certification accusing Ms. Lee of altering and directing the alteration of documents "in violation of federal law, misrepresenting facts to District officials and misappropriating District funds." The report, later characterized by the Board as a "complaint," further accused Ms. Lee of violating state and federal law, misappropriating federal funds, and claimed that her conduct may have violated § 39.02 of the Texas Penal Code. The report further stated that the District was communicating with the local police enforcement agency regarding possible criminal conduct by Ms. Lee.

8

24. The report was supposedly filed under 19 T.A.C. § 137.587. However, this regulation provided for such a report only at the time of termination or resignation of a certified employee. The allegations of the Board of Trustees, as found by the hearing examiner, were unsupported by the evidence, having been clearly shown as false by Ms. Lee once she was given notice of the charges and an opportunity to respond. As found by the hearing examiner, the complaint "is the most egregious and underhanded attempt by Aransas to do harm to Lee . . . it is unthinkable that any good was intended by these actions; quite the contrary, the action speaks to being contrived and malicious."

25. "Aransas was biased in its handling of Lee." HEFOF 49.

26. While terminating the employment of and destroying the career of Ms. Lee over false claims of violation of federal education regulations, Defendant Koonce knew of an actual violation of confidentiality regulations on the part of one of the District's witnesses but took no action against her. HEFOF 68.

27. Pursuant to state procedure, Ms. Lee requested the Commissioner of Education to appoint an independent hearing examiner, before whom a hearing was conducted in January and February of 1999. On April 8, 1999 the hearing examiner issued findings of fact and conclusions of law as set forth herein, concluding that ACISD had failed to present evidence establishing good cause for the termination of Ms. Lee's contract and recommending that Ms. Lee's appeal of the proposed termination be granted. The hearing examiner's findings, supported by substantial evidence, were binding both on Ms. Lee and the District.

28. Acting at the behest of its agents and attorneys, who themselves inferentially were acting at the behest of the individual Defendants, the Board of Trustees disregarded binding factual findings and terminated Ms. Lee's employment. Defendants McElwee, Hoekstra,

9

Livingston, Villa and Baker were present and voted in favor of the Board's action on April 28, 1999. Defendants Hoekstra, McElwee, Baker and Livingston were present and voted for the adoption of the written decision of the Board of Trustees on May 5, 1999.

29. At the administrative hearing Mr. Koonce presented knowingly false and illogical testimony against Ms. Lee. Mr. Koonce further intentionally and falsely concealed exculpatory information from Ms. Lee and the hearing examiner. The District further sought to apply the federal regulations retroactively against Ms. Lee in violation of the requirements of due process of law. The District presented contrived, illogical and fabricated "expert" testimony against Ms. Lee. The District sought to overwhelm Ms. Lee with false charges. As stated by the hearing examiner, "until each element of the various allegations was researched for credibility and legality's sake, the broad brush approach of attack upon Lee might have been effective by its shear volume," the examiner having noted previously that "the entire process and volumes of exhibits and transcripts were, at first blush, overwhelming and exhaustive."

30. Following the issuance of the findings of fact by the hearing examiner, all individual Defendants were on unmistakable notice that there was no factual basis for the termination of Ms. Lee and that she had been victimized by a biased, personal attack by the District. Nevertheless, Defendant Spears failed and refused to withdraw his recommendation for termination. The five Board members voting to terminate Ms. Lee's employment acted with conscious disregard of her rights and/or in intentional violation thereof.

31. Ms. Lee appealed the Board's action to the Commissioner of Education who reversed Ms. Lee's termination by decision dated July 5, 1999. Plaintiff has filed suit in state court to enforce the Commissioner's decision. The District has failed and refused to reinstate

Ms. Lee, although the District has made a payment to Ms. Lee in an amount erroneously claimed to be her salary entitlement.

32. Plaintiff had a property right in her contract of employment through the 1999-2000 school year. Pursuant to § 21.201 *et seq.* of the Texas Education Code Plaintiff had a property right in the renewal of this contract. The District and individual Defendants acted in concert to terminate these property rights without substantive due process of law in that the District's action was arbitrary and capricious and without rational basis in light of the binding fact findings of the hearing examiner. The termination of Plaintiff's property rights further violated the requirements of procedural due process in light of the binding finding of bias on the part of the District and the overall lack of fundamental fairness demonstrated throughout the conduct of the District and the individual Defendants.

33. Ms. Lee was unable to obtain comparable other employment following her termination by the District and was forced into taking retirement.

34. Defendants' actions caused Plaintiff damages in the form of lost salary, lost future earnings, reduction in retirement and/or annuity benefits, harm to her wage earning capacity, mental anguish, harm to her personal reputation, and harm to her business reputation.

## COLLATERAL ESTOPPEL

35. Defendants are collaterally estopped from contesting the fact findings made by the hearing examiner and those fact findings are binding on Defendants herein.

## CAUSES OF ACTION

36. Defendants' conduct constituted a taking of Ms. Lee's property rights without just compensation. To the extent that the District seeks to rely on § 21.304(f) of the Texas Education Code permitting a district to avoid reinstatement of a teacher in return for payment of one year's

11

salary, Plaintiff would show that this statute is unconstitutional as a violation of the due process and takings clauses of the United States Constitution.

## PUNITIVE DAMAGES

37. The acts of the individual Defendants herein were malicious and in bad faith and meet the requisite standards for an award of punitive damages, which are sought against the individual Defendants.

## CUSTOM OR POLICY

38. The conduct of the District and the individual Defendants constituted the custom or policy of the District in that such conduct was either taken by the Board of Trustees, under its direction, or with its knowledge and acquiescence.

39. Defendants acted individually and in concert, and under color of state law. The individual Defendants acted in knowing violation of Plaintiff's clearly established rights and are entitled to no immunity of any kind.

## JURY DEMAND

40. Plaintiff demands a trial by jury.

## PRAYER

41. WHEREFORE, Plaintiff prays for the following relief:

   a. A permanent injunction reinstating Plaintiff to her former position as Special Education Director for Aransas County Independent School District;

   b. An award of Plaintiff's actual damages, including compensation for lost salary and benefits, mental anguish, emotional distress, damage to her personal and professional reputation, damages for embarrassment, damages to her future earning capacity, and reduction of retirement and/or annuity benefits;

   c. An award of costs incurred in this action and reasonable attorneys' fees;

12

d. An award of punitive or exemplary damages against the individual Defendants for unlawful conduct that was done intentionally, with malice, and/or with callous or reckless indifference to the rights of Plaintiff; and

e. Such other relief, either legal or equitable, as may be just and proper.

Respectfully submitted,

BRIM, ARNETT & ROBINETT, P.C.
2525 Wallingwood Drive
Building 14
Austin, Texas 78746
(512) 328-0048
(512) 328-4814 (Facsimile)

By: _____
Richard L. Arnett
State Bar No. 01333300

13